**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| BERKLEY INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) ) | Case No. 17-cv-12330-DJC |
| GTC CONSTRUCTION MANAGEMENT, JONATHAN D. KEEVERS, and SHAWNA KEEVERS, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER**

CASPER, C. J.                                                                                    May 19, 2026

## I.      Introduction

On November 27, 2017, Plaintiff Berkley Insurance Company ("Berkley") filed this indemnity action against Defendants GTC Construction Management ("GTC"), Jonathan D. Keevers and Shawna Keevers (collectively, "Defendants"), alleging liability for losses resulting from payment and performance bonds that Berkley as surety issued on Defendants' behalf.  D. 1. Less than a month later, the Court allowed a joint motion for judgment as to Defendants' liability on Count I (contractual indemnity) and Count II (common law indemnity) of the complaint.  D. 16. After GTC filed for bankruptcy in 2018, the Court dismissed the action without prejudice to either party moving to restore it to the docket, upon final determination of bankruptcy proceedings. D. 23.

On September 15, 2023, upon the conclusion of GTC and the Keevers' bankruptcy proceedings, Berkley moved to restore the case to the docket, D. 24, and the Court allowed same, D. 25. Berkley has now moved for summary judgment against the Keevers in the amount of $7,648,886.26 in damages, plus prejudgment interest. D. 31. For the reasons stated below, the Court ALLOWS Berkley's summary judgment motion.

## II.      Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A genuine issue is one that can 'be resolved in favor of either party' and a material fact is one which 'has the potential to affect the outcome of the case.'" Gerald v. Univ. of P.R., 707 F.3d 7, 16 (1st Cir. 2013) (quoting Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 25 (1st Cir. 2011)). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving parties may not rest on the allegations or denials in their pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court reviews the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor, Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001), but only "to the extent supportable by the record." Scott v. Harris, 550 U.S. 372, 381 n.8 (2007).

### III.    Factual Background

The following facts are drawn from Berkley's submission of material facts and documents cited therein, D. 33, and the Keevers' response to same, D. 36, and are undisputed unless otherwise noted.[1]

Berkley issues surety bonds to contractors and subcontractors to secure their performance on construction projects.  D. 33 ¶ 1.  GTC was a construction contractor.  Id. ¶ 2.  Jonathan D. Keevers ("Jonathan") was the president, treasurer, secretary and sole director of GTC, and Shawna Keevers ("Shawna") is his wife.  Id. ¶ 6; D. 42-1 ¶ 1.  On or about July 6, 2016, GTC and the Keevers executed an indemnity agreement ("Indemnity Agreement") with Berkley.  D. 15-1 at 6-14; D. 33 ¶ 8.

The Indemnity Agreement provides the following indemnity obligation:

> [Defendants], jointly and severally, shall exonerate, hold harmless, indemnify, and keep indemnified [Berkley] from and against all liability arising from any cause of action, claim, cost, damage, debt, demand, expenditure, liability, loss, payment, obligation, or penalty of any kind whatsoever, including without limitation, interest costs, court costs, costs to compromise or settle any claim, expert fees, investigative costs and the fees and expenses of attorneys, accountants and other professionals or service providers of any nature whatsoever, whether or not alleged, asserted, awarded, contingent, incurred, potential, threatened, matured or unmatured, and shall reimburse [Berkley] for any payment by it, related to or by reason of: (i) this Agreement, a Contract or Bonds and/or [Berkley]'s procuring or enforcement of the same or the prosecution, investigation or defense of any Claim against or by [Berkley] . . . .    [Defendants] shall also pay to [Berkley] interest on all such payments, from the date thereof, at the maximum legal post-judgment rate permitted by New York law, compounded daily.

---

[1] Even after the renewal of Berkley's summary judgment motion after the Court allowed additional discovery, D. 44, the Keevers did not submit a statement of undisputed material facts in compliance with Local Rule 56.1, which provides that a "party opposing the [summary judgment] motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."  The Keevers instead submitted affidavits from Jonathan Keevers to dispute Berkley's itemized calculation of damages.  D. 42-1; D. 46-1.  Accordingly, the Court deems admitted all material facts set forth in Berkley's motion which the Keevers have not controverted. See Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003).

D. 15-1 at 6.  The Indemnity Agreement further provides that:

> [Berkley] shall have the exclusive right in its name and/or the name of any Indemnitor to decide and determine whether any Indemnified Claim, or any claim, off-set or other right of an Indemnitor on a bonded Contract or Contract in which [Berkley] has an interest, shall or shall not be paid, compromised, settled, resisted, defended, prosecuted, tried or appealed, and [Berkley]'s decision thereon, absent fraud, shall be final, conclusive and binding upon the Indemnitors.  An itemized statement of payments made by [Berkley] for any of the purposes specified herein, sworn to by an officer of [Berkley] or the copies of the checks or drafts for such payments, shall be prima facie evidence of the liability of the Indemnitors to reimburse [Berkley] such amounts with interest from the date of payment.

Id.

In reliance on the Indemnity Agreement, Berkley issued performance and payment bonds ("Bonds") on behalf of GTC on nine construction projects ("Projects"), including (1) Bond No. 0206872 in the amount of $650,357 for improvements to the Barnstable Superior Court for the Commonwealth of Massachusetts; (2) Bond No. 0208147 in the amount of $1,785,614 for building renovations for Fitchburg State University; (3) Bond No. 0206866 in the amount of $574,041 for renovations to an aquatics center for the Town of Brookline; (4) Bond No. 0191839 in the amount of $2,616,681 for additions to an elementary school for the Town of Arlington; (5) Bond No. 099274 in the amount of $2,463,603 for an innovation center in Boston for Flextronics America, LLC; (6) Bond No. 0208145 in the amount of $1,567,048 for a kitchen replacement for Bridgewater State University; (7) Bond No. 099259 in the amount of $1,815,599 for interior renovation and elevator installation for the Haverhill Housing Authority; (8) Bond No. 0110003 in the amount of $2,209,987 for a modernization project for the Lowell Regional Transit Authority; and (9) Bond No. 0205818 in the amount of $1,909,620 for a bridge project for the Lowell Regional Transit Authority.  D. 33 ¶ 14; D. 34-1 at 3.

Berkley received performance bond demands from Project owners, payment bond claims from GTC subcontractors and demands or other notices from Project owners of subcontractor

4

direct payment claims alleging that GTC failed to pay amounts due for labor and materials supplied by those subcontractors.  D. 33 ¶ 15; D. 34-1 at 2.  Defendants stipulated that they were unable to meet their financial obligations, that Berkley incurred costs to respond to the performance and payment bond claims and complete GTC's work on the Projects, and agreed that they failed to reimburse, indemnify and hold Berkley harmless consistent with the Indemnity Agreement.  D. 33 ¶¶ 16-19.

### IV.    Procedural History

Berkley filed this lawsuit on November 27, 2017.  D. 1.  On December 20, 2017, the Court allowed a joint motion for judgment as to Defendants' liability on Count I (contractual indemnity) and Count II (common law indemnity) of the complaint.  D. 16.  After GTC filed for bankruptcy in 2018, the Court dismissed the action without prejudice to either party moving to restore it to the docket, upon final determination of bankruptcy proceedings.  D. 23.  On September 15, 2023, Berkley moved to restore the case to the docket, D. 24, and the Court allowed same.  D. 25. Berkley then moved for summary judgment against the Keevers in the amount of $7,648,886.26 in damages, plus prejudgment interest.  D. 31.

On April 22, 2024, the Court allowed written discovery, at Defendants' request, as to two categories of payments:  (1) $364,932.67 of payments to subcontractors that the Keevers alleged did not work on the bonded projects and (2) $1,781,689.54 of payments from a source of funds belonging to GTC, and, in light of this ruling, denied Berkley's motion for summary judgement without prejudice and with leave to renew the motion following discovery on these issues.  D. 44. In accordance with this leave, Berkley renewed its summary judgement motion on July 10, 2024, D. 45, and supplemental opposition from the Keevers followed, D. 46, and Berkley's reply, D. 47. The Court heard the parties on the pending motion and took this matter under advisement.  D. 52.

**V.    Discussion**

Berkley argues that there is no genuine dispute of material fact that Berkley incurred and paid $7,648,886.26 in bond-related losses in connection with the Projects and that, accordingly, Berkley is entitled to this amount in damages, plus prejudgment interest at the rate agreed-upon in the Indemnity Agreement.  D. 34 ¶ 7; D. 34-2 at 13; D. 45 at 9.  In response, the Keevers submit an affidavit by Jonathan (the "Keevers Affidavit"), which they argue raises "significant disputes as to what happened with the assets of [GTC] that were subject to control of [Berkley]."  D. 42 at 2.  The Keevers also assert that the affidavit of Tracey A. Ibsen ("Ibsen Affidavit"), D. 34, submitted by Berkley in support of its motion for summary judgment, contains misrepresentations and is based on inadmissible hearsay evidence and, thus, cannot support a judgment in Berkley's favor.  D. 42 at 2; D. 46 at 2-6.

Indemnity agreements, such as the one at issue in this case, are valid and enforceable under New York law.[2]  Gen. Acc. Ins. Co. of Am. v. Merritt-Meridian Const. Corp., 975 F. Supp. 511, 516 (S.D.N.Y. 1997) (citing Int'l Fidelity Ins. Co. v. Spadafina, 192 A.D.2d 637 (N.Y. App. Div. 1993)).  Where the general contractor has expressly agreed to indemnify the surety for losses arising from claims made on surety bonds, New York law provides that "the surety is entitled to indemnification upon proof of payment, unless payment was made in bad faith or was unreasonable in amount, and this rule applies regardless of whether the principal was actually in default or liable under its contract with the obligee."  Frontier Ins. Co. v. Renewal Arts Constr. Corp., 12 A.D.3d 891, 892 (N.Y. App. Div. 2004); see First Nat'l Ins. Co. v. Joseph R. Wunderlich,

---

[2] Pursuant to the Indemnity Agreement, the parties agreed that its "construction, validity, performance and all rights, obligations and liabilities arising hereunder shall be governed, construed and enforced in accordance with the laws of the State of New York, exclusive of conflicts of law principles."  D. 15-1 at 11.

Inc., 144 F. App'x 125, 127 (2d Cir. 2005) (explaining that the effect of such provisions is to "preclude[ ] litigation over questions of whether the [surety was] actually liable for the payments claims") (internal quotation marks and citation omitted); Gen. Acc. Ins. Co. of Am., 975 F. Supp. at 516 (explaining that sureties enjoy broad discretion "to settle claims because of the important function they serve in the construction industry, and because of the economic incentives motivating them are a sufficient safeguard against payment of invalid claims").

"New York courts have equated 'bad faith' with 'fraud or collusion.'" Travelers Indem. Co. v. Harrison Const. Grp. Corp., No. 06-cv-4011-FB-RML, 2008 WL 4725970, at *5 (E.D.N.Y. Oct. 22, 2008) (quoting Peerless Ins. Co. v. Talia Const. Co., 272 A.D.2d 919 (N.Y. App. Div. 2000)); see HRH Constr., LLC v. Fid. & Guar. Ins. Co., No. 04-cv-1606-PKC, 2005 WL 8168375, at *5 (S.D.N.Y. July 8, 2005); see also Gen. Acc. Ins. Co. of Am., 975 F. Supp. at 516 (equating "good faith" with "the absence of an indication of fraud or collusion between [surety] and the claimants").

"A surety's expenditure of funds on matters related to the underlying bonds is entitled to a 'presumption of propriety,' such that on a surety's summary judgment motion it is the indemnitors' burden to produce evidence showing 'bad faith or unreasonableness in the amount paid.'" Liberty Mut. Ins. Co. v. Biltmore Gen. Contractors, Inc., 21-cv-5130-RPK-RER, 2023 WL 5350813, at *4 (E.D.N.Y. Aug. 21, 2023) (first quoting Frontier Ins. Co., 12 A.D. at 892; and then quoting Travelers Indem. Co., 2008 WL 4725970, at *4). "Conclusory allegations of bad faith are insufficient to defeat a motion for summary judgment in favor of a surety seeking to enforce an indemnity agreement." Gen. Acc. Ins. Co. of Am., 975 F. Supp. at 518. Moreover, evidence that a surety's payments were excessive or made over a defendant's objections and toward incomplete projects do not establish bad faith or unreasonableness. See Gen. Acc. Ins. Co. of Am., 975 F.

7

Supp. at 519; Frontier Ins. Co., 12 A.D.3d at 893; see also HRH Constr., LLC v. Fid. & Guar. Ins. Co., No. 04-cv-1606-PKC, 2005 WL 8168375, at *5 (S.D.N.Y. July 8, 2005) (holding that a defendant who merely raises "questions concerning and possible defenses" to claims does not defeat summary judgment).

Here, the Indemnity Agreement provides that Defendants, "jointly and severally, shall exonerate, hold harmless, indemnify, and keep indemnified" Berkley "from and against all liability" and "shall reimburse [Berkley] for any payment by it" related to the Bonds issued to fund the Projects. D. 15-1 at 6. The Indemnity Agreement also provides that Berkley "shall have the exclusive right in its name and/or the name of any Indemnitor to decide and determine whether any Indemnified Claim, or any claim, off-set or other right of an Indemnitor on a bonded Contract or Contract in which [Berkley] has an interest, shall or shall not be paid, compromised, settled, resisted, defended, prosecuted, tried or appealed" and that Berkley's "decision thereon, absent fraud, shall be final, conclusive and binding" upon Defendants. Id. "An itemized statement of payments made by [Berkley] for any of the purposes specified herein, sworn to by an officer of [Berkley] . . . , shall be prima facie evidence of the liability" of Defendants. Id.

Absent a showing of bad faith or unreasonableness, these provisions in the Indemnity Agreement entitle Berkley to indemnification by Defendants upon proof of payment. See Frontier Ins. Co., 12 A.D.3d at 892. To that end, Berkley has proffered an itemized statement of all Berkley Bond-related payments made and recoveries received in connection with the Projects, sworn to by Bruce W. Kahn ("Kahn"), a senior vice president of claims at Berkley Surety. D. 34 ¶ 9; D. 34-2. According to Kahn's itemized statement, as well as the Ibsen Affidavit, D. 34 ¶ 6, Berkley incurred the following losses: $252,518.95 in connection with Bond No. 0206872; $739,421.92 in connection with Bond No. 0208147; $168,460.92 in connection with Bond No. 0206866;

$590,159.96 in connection with Bond No. 0191839; $191,082.93 in connection with Bond No. 099274; $305,232.23 in connection with Bond No. 0208145; $2,794,456.26 in connection with 099259; $1,562,174.92 in connection with Bond No. 0110003; and $1,045,378.64 in connection with Bond No. 0205818—all for a total of $7,648,886.26. D. 34 ¶ 7; D. 34-2 at 13. The itemized statement offers further detail as to each of these figures, including the dates of payments, the transaction type, payee and payment amount. D. 34-2. In addition, Ibsen, a surety claims examiner for Berkley Surety, attests in an affidavit that Berkley carefully maintained records of all GTC Bond-related expenses, fees, costs, payments, recoveries and receipts, reviewed each invoice before payment and carefully maintained records of all such payments made and recoveries accepted. D. 34 ¶ 8.

In light of this showing, Berkley is entitled to a presumption of propriety, and the burden shifts to Defendants to provide evidence showing a genuine dispute of material fact over whether Berkley made its payments in bad faith or unreasonably. See Liberty Mut. Ins. Co., 2023 WL 5350813, at *4. In an attempt to meet their burden, Defendants proffered the Keevers Affidavit which challenged four categories of color-coded payments included in the itemized statement. D. 42-1; see id. ¶ 12 and pp. 11-23. For instance, Jonathan asserts that the itemized statement of payments includes "Partial Recovery" credits that total $4,806,631.80 but are otherwise unexplained, id. ¶ 7, and that Berkley overlooked $6.5 million in accounts receivables owed to GTC when it made payments on claims. Id. ¶ 9. Moreover, Jonathan states that he is unable to identify the project associated with $855,655.23 worth of payments, that Berkley overpaid subcontractors $948,522.43 because it did not consider back-charges, that $364,932.67 of payments went to subcontractors that did not work on the Projects and that $1,781,689.54 were dated the wrong year. Id. ¶ 12. Jonathan further attests that millions of dollars should not have

9

been paid out to a series of subcontractors due to defective work or delays or because the itemized statement does not provide a satisfactory explanation. Id. ¶ 13.

As the Court previously explained, D. 44, and incorporates here, "[a]s to the categories of payments color-coded yellow (the 'unallocated' expenses for which Jonathan was unable to determine corresponding projects, [D. 42-1] ¶ 12.a.) and green (overpayments that allegedly did not reflect 'back-charges,' id. ¶ 12.b.), these either amount to speculation or resemble the sort of challenges that fall short of bad faith." Id. (citing Gen. Acc. Ins. Co. of Am., 975 F. Supp. at 519). Jonathan's conclusory assertion that some of the subcontractors listed on the itemized statement were not involved in the Projects is unsupported by evidence and, without more, does not create a genuine dispute of material fact as to whether Berkley engaged in fraud or unreasonably calculated payments. See Spadafina, 192 A.D.2d at 639 (holding that "conclusory affidavits are insufficient to raise a triable issue as to either the bona fides of the settlement or as to the reasonableness of its amount"). "Similarly, Jonathan's additional challenges to Berkley's payments made for incomplete or defective work, or otherwise question the need for Berkley to pay such expenditures on certain projects, see D. 42-1 ¶ 13, do not plausibly suggest bad faith." D. 44. After completing the additional limited discovery, Defendants also conceded that there is no genuine dispute of material fact that Berkley incurred and paid $364,932.67 to subcontractors on the bonded projects (color-coded blue). D. 46 at 2; see D. 42-1 ¶ 12.c.

As to the only remaining dispute as to payment, the $1,781,689.54 of payments from a source of funds belonging to GTC (color-coded magenta), following the limited discovery, Berkley provided additional evidence, including accounting records, that the GTC Funds recovered by Berkley and used to pay GTC Berkley-bonded Project expenses were accounted for as credits against Berkley's loss. D. 45-2 at 4-7; D. 45-4 at 172-92. Looking at the Keevers

Affidavit's exhibits, as Berkley pointed out, even those charts show credits for the magenta-coded payments. D. 42-1 at 15, 18-19, 22. None of the assertions about these payments rise to the level of bad faith or unreasonableness. Although Jonathan challenges Berkley's calculation of "Partial Recovery" credits and asserts that a series of payments are not explained in greater detail, Defendants proffer no additional evidence to indicate that Berkley, which is entitled to a presumption of propriety, engaged in fraud or collusion with subcontractors. See HRH Constr., LLC, 2005 WL 8168375, at *5. As the Court has already noted, evidence that a surety's payments were excessive or made over a defendant's objections or toward incomplete projects do not establish bad faith or unreasonableness. See Gen. Acc. Ins. Co. of Am., 975 F. Supp. at 519; Frontier Ins. Co., 12 A.D.3d at 893. Additionally, Jonathan's allegations that Ibsen misrepresented whether expenditures made from the Wells Fargo account were included in the computation of the losses incurred by Berkley, D. 46 at 3, are belied by the itemized statement which includes the Wells Fargo account payments, the GTC Funds, credits and the GTC Berkley-bonded Project recoveries. D. 34-2.[3]

Separately, Defendants argue that the Ibsen affidavit cannot serve as the basis of summary judgment because it relies upon hearsay statements, i.e., an itemized statement of bond-related losses prepared and attested to by Bruce W. Kahn, a senior vice president of claims at Berkley Surety. D. 42 at 2. Under Fed. R. Civ. P. 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." As noted in her affidavit, Ibsen is a surety claims examiner for Berkley Surety, the entity

---

[3] Having determined that Berkley has not misrepresented its losses to the Court, the Court declines Defendants' request to dismiss Berkley's complaint under a fraud on the Court theory. D. 46 at 6-8.

responsible for handling and administering claims asserted under the bonds issued by Berkley on behalf of GTC; she also attests to having personal knowledge of the matters to which she attested. D. 34 ¶¶ 1, 6-7.  Accordingly, the Court may consider her statements concerning bond-related losses as reflective of her own personal knowledge.  See Fed. R. Civ. P. 56(c)(4).  To the extent Ibsen relies upon the itemized statement prepared by Kahn, and assuming *arguendo*, without deciding, that this statement contains hearsay, such evidence would be admissible.  Given Ibsen's employment at Berkley Surety, her role as a surety claims examiner and her personal knowledge of Berkley's maintenance and review of records concerning the bond-related losses, Ibsen is qualified to authenticate the itemized statement by Kahn such that any hearsay contained therein would fall under the business records exception.  See Fed. R. Evid. 803(6); see also Wallace Motor Sales, Inc. v. Am. Motors Sales Corp., 780 F.2d 1049, 1060-61 (1st Cir. 1985) (noting that "it is well established that the witness need not be the person who actually prepared the record").

In sum, because Berkley has proffered sufficient proof of payment, and Defendants have not made the necessary showing of bad faith or unreasonableness, Berkley is entitled to $7,648,886.26 in damages as a matter of law.  Consistent with the terms of the Indemnity Agreement, Berkley may also collect interest on this amount at the agreed-upon (New York) statutory rate of nine percent.

## VI.    Conclusion

For the foregoing reasons, Berkley's motion for summary judgment in the amount of $7,648,886.26, plus prejudgment interest at the nine percent New York statutory rate, is ALLOWED.  D. 31.  The Court further ORDERS that Berkley file a proposed judgment consistent with this ruling by May 26, 2026.

13

**So Ordered.**

/s Denise J. Casper
Chief United States District Judge